CURTIS G. OLER (Bar No. 63689)
LAW OFFICES OF CURTIS G. OLER
Post Office Box 15083
San Francisco, California 94115
Telephone: 415 346-8015
Facsimile: 415 346-8238
Attorney for Plaintiff
  Andrew King

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ANDREW KING, | ) | NO.  CV-11-1857-WHA |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| vs. | ) |  PLAINTIFF'S OPPOSITION TO |
| | ) | DEFENDANT'S MOTION FOR SUMMARY |
| CITY AND COUNTY OF SAN | ) | JUDGMENT |
| FRANCISCO, PUBLIC UTILITIES | ) | Date:     September 6, 2012 |
| COMMISSION, SAN FRANCISCO | ) | Time:     8:00 A.M. |
| WATER DEPARTMENT, and | ) | Place:    Courtroom. 8, 19th Floor |
| DOES 1 THROUGH 25, | ) |            450 Golden Avenue |
| | ) |            San Francisco, California 94102 |
| Defendants. | ) | Judge:    Hon. William H. Alsup |
| _____ | ) | |

MPA ISO Opp MSJ                                          1

TABLE OF CONTENTS

Page

INTRODUCTION........................................................................................ 1

STATEMENT OF THE CASE...................................................................... 1

STATEMENT OF FACTS............................................................................ 1

ISSUES PRESENTED................................................................................. 11

ARGUMENT.............................................................................................. 11

    Summary Judgment Standards................................................................ 11

    Summary of Argument........................................................................... 12

    1.  King has presented substantial credible evidence supporting his claims
    of race discrimination and harassment pursuant to 42 U.S.C. Section 1981
    and California Government Code Section 12940a and j........................... 12

    2.  King has presented substantial credible evidence supporting his claims
    of disability discrimination..................................................................... 15

    3.  King has presented substantial credible evidence supporting his claims
    of harassment pursuant to Cal. Govt. Code Section 12940k................... 16

    4.  King has presented substantial credible evidence to support his claims
    of retaliation........................................................................................ 17

Conclusion................................................................................................. 18

1

TABLE OF AUTHORITIES

2  Case                                                                                    Page

3      Adickes v. S.H. Kress & Co., (1970) 90 S.Ct. 1598, 398 U. S. 148, 26
4         L.Ed.2d 1429.........................................................................................    11

       California Pacific Bank v. Small Business Administration, 557 F.2d 218
5         (9th Cir. 1977........................................................................................    11

6      Guz v. Bechtel National, Inc., (2000) 24 Cal.4TH 317, 353................................    15

7      McDonnell Douglas Corp., v. Green, 411 U.S. 792 (1973)...................................    14

8      Pardi v. Kaiser Found. Hosps. 389 F.3d 840 (9th Cir. 2004)...............................    17

9      Pepper & Tanner, Inc., v. Shamrock Broadcasting, Inc., 563 F.2d 391
10        (9th Cir. 1977).......................................................................................    12

       Pollar v. Columbia Broadcasting Sys., Inc., (1962) 82 S.C. 486, 368 U.S. 464,
11        7 L.Ed.2d 967........................................................................................    12

12     St. Mary's Honor Center v. Hicks, 509 U.S. 506 (1993)......................................    15

13     Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).........    14

14     U.S. Jaycees v. San Francisco Junior Chamber of Commerce, (D.C. Cal. 1972)
15        354 F. Supp. 61, aff'd per curium, 513 F.2d 1226 (9th Cir. 1975)......................    12

16     Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028 (2005)......................................    17

17  Other Statutes and Authorities

    Federal Rules of Civil Procedure, Rule 56...........................................................    11
18
    42 U.S.C. Section 1981.....................................................................................    2,
19                                                                                                             12, 13,
                                                                                                           17, 18
20
    California Government Code Section 12940a.......................................................    2,
21                                                                                                             12, 13,
                                                                                                           15, 18
22
    California Government Code Section 12940f........................................................    2
23
    California Government Code Section 12940h.......................................................    2,
24                                                                                                             17, 18

25  California Government Code Section 12940j .......................................................    2,
                                                                                                           12, 13
26                                                                                                           18

27

28  MPA ISO Opp MSJ                          3

California Government Code Section 12940k.................................................................... 2, 16, 18

California Government Code Section 12940m.................................................................... 2, 15, 16 18

California Government Code Section 12940n.................................................................... 2, 15, 16 18

I.  INTRODUCTION

Defendant, City and County of San Francisco, moves this Court for Summary Judgment against Plaintiff, Andrew King, on all five causes of action alleged in his complaint.

II.  STATEMENT OF THE CASE

The Complaint herein alleges a First Cause of Action for violation of 42 U.S.C. Section 1981, his Second Cause of Action for violation of California Government Code Section 12940a, m and n for Discrimination on Account of his Physical Disability And Refusal to Reasonably Accommodate Physical Disability,  his Third  Cause of Action for violation of California Government Code Section 12940a Race And Color Discrimination, his Fourth Cause of Action for violation of California Government Code Section 12940j and k for Harassment, and his Fifth Cause of Action for violation of California Government Code Section 12940h for Retaliation.

Defendant answered denying liability and pleading affirmative defenses.   The parties have mutually propounded and responded to written discovery, including Defendants deposition of Plaintiff.

Pretrial conference herein is set for September 10, 2012 and jury trial is set herein for September 17, 2012.

III.  STATEMENT OF FACTS

King is an African American male with a qualified physical disability.  King was employed by the San Francisco Water Department, until March 20, 2010 the effective date of his disability retirement therefrom.  During King's  said employment, he always performed all of the duties of his assignments in an excellent manner.  Declaration of Andrew King, ("King Decl.), at Pars. 1, 2  and 4.

King was initially employed as an Apprentice Plumber in 1996 and was thereafter promoted to the position of Utility Plumber in 2006.  Although King continued to perform all of his duties in an excellent manner, he began being subjected to a continuing pattern of unlawful discriminatory employment practices.  King Decl., Pars. 5 and 6.

At the beginning of his said employment, King was most often sent out as a member of the crew on the Cutting Truck.  On this crew, extremely hard physical labor was required, which included jack hammering and manually hauling away rock debris.  However, African Americans (Black) including King, were compelled to work long periods in this capacity, while non Black employees similarly situated, were not required to work for such a lengthy period in such capacity.  King Decl., Par. 7.

Black plumbers were generally barred from working on the main gang which was the most favorable assignment in the department, which received higher income with less difficult work.  As a matter of fact, King was only the third African American plumber in my 12 years to work on the main gang as a 7388 Utility Plumber.  King Decl., Pars. 8 and 9.

 Even then, despite his classification, King was always listed as a helper and not a plumber.  During King's time on the main gang, even though he always performed all of his assigned and related duties in an excellent manner, he was continuously falsely accused of not "picking the work up" fast enough, all without cause or foundation.  King was also continually being coerced to work on another truck, (the suction truck) which did not require the same level of expertise and did not offer the same opportunity for significant overtime.  King Decl., Par. 10, 11 and 12.

After being off work for 14 months recovering from surgery in connection with a non work related injury, King returned to work in February, 2009, with work restrictions issued by his physician.  However, notwithstanding such work limitations, and even though King continued to seek reasonable accommodation for said disability relating to his injuries, Defendant continued to refuse reasonable accommodation for same causing aggravation of said injury.  King Dec. Pars. 13, 14.

Thusly, shortly thereafter, King was compelled to seek and obtain disability retirement from his said employment on or about March 20, 2010.  King Dec. Par. 15.

King has not worked since that time.  He continued to protest continuing unlawful

MPA ISO Opp MSJ                                            6

discriminatory employment practices against him, including Defendant's refusal to accommodate his said physical disability.  King Dec., Pars. 16, 17.

King sought and obtained counseling from Defendant's Employee Assistance Program between August 2, 2007 and December, 2011, during which time he complained of his anger and elevated stress level related to unfair managerial practices, racial discrimination, and ongoing harassment, including the continual exacerbation of residual daily stressors he had been experiencing due to remaining strong feelings and disappointments about unfair practices at his place of employment.  King's complaints were made to Jean Crossman-Miranda in her capacity as Senior Employee Assistance Counselor.  King Decl. Par. 18

King has also during the entire tenure of his employment been subjected to continuing harassment, ridicule and humiliation without cause or justification. Said actions and conduct have been taken against him on account of his race and color,  physical disability, and in retaliation against him because of his protests of such unlawful actions.  King Decl. Pars. 19, 20.

King remains under psychiatric care relating to severe psychological harm resulting from the unlawful discriminatory employment actions taken against him.  King Decl. Par. 21.

King has read the declaration of Bill Teahan.

In paragraph 3 thereof, Teahan states that for many years until approximately 2007, Water Department CDD plumbers, whether apprentice or utility, were responsible for installing, maintaining, and repairing water services that delivered water from a water main into a private property.  Main gang plumbers were responsible for installing, maintaining, and repairing water mains or water services pipes of four inches or larger located within the City.  King Decl. Par. 23

As a matter of fact, other differences between Service Department Plumbers and Main Gang Plumbers include more physical labor such as jack-hammering, digging and back filling. The Main Gang utilized more machinery to complete tasks done manually by the Service Department.  The nature of the work for the main gang, servicing pipes four inches or larger required prep work done by other crews, which allowed for downtime.  Also, the pre-fab work

1   done by the main gang was significantly less physical than work done by the Service Department.

2   King Decl., Par. 24

3   In paragraph 4, Teahan states, among other things, that almost all plumbers starting out in

4   the Water Department were initially assigned to the service department.  As Water Department

5   plumbers became more experienced and skilled at dealing with the City's water infrastructure

6   through their work in the Service Department, they would typically be allowed to transfer to the

7   Main Gang.  In general, Main Gang work requires more experience and skill than the Service

8   Department.  With the input of CDD foremen and depending on the CDD's operational needs

9   and staffing, in general Teahan assigned plumbers from the Service Department to the Main

10  Gang once they demonstrated a high degree of plumbing skill and water distribution knowledge.

11  King Decl., Par. 25

12  Contrary to same, Greg Hubley and Dennis Watson did not start in the Service

13  Department, but were employed directly into the Main Gang.   In 2009, the Water Department

14  began cross training between the Service Department and the Main Gang.  Prior to cross-training

15  there was no apparent policy in place for assignment to the Main Gang.  Appointments to the

16  main gang were generally at the request of Bill Olenger, President of Local 38, Gary Tinsfield,

17  Tom Sutter or Billy Teahan.  Many of these deals were made at the local bar, the Bonanza.

18  There is no indication that plumbers who went to the Main Gang had the greater skills or

19  experience than others, rather transfer to the Main Gang gave them the opportunity to acquire

20  greater skills and experience.   King Decl., Par. 26

21  At paragraph 5 of Teahan's declaration, Teahan states, among other things,  that in

22  approximately 2007, the SFPUC abolished the division of labor to a purely rotational division of

23  labor.  King Decl., Par. 27

24  As a matter of fact, when King returned from Medical Leave in 2009, the division of

25  labor practice was still intact.  Sometime between the end of 2008 and early 2009, Kevin Berry,

26  began the practice of cross training, which was a rotational division of labor to make it a more

27

28  MPA ISO Opp MSJ                                    8

1   fair system.  Water Department management like Billy Teahan were not in favor of this change

2   because it reduced opportunity for greater knowledge, experience and overtime pay for Main

3   Gang members.   King Decl., Par. 28

4       At paragraph 6 of Teahan's declaration, Teahan states, among other things,  that the

5   Water Department has not used a Cutting Truck since 2000.   King Decl., Par. 29

6       As a matter of fact, as an apprentice plumber since 1996 until the end of the Cutting

7   Truck era, King spent an inordinate amount of time on the Cutting Truck because of his physical

8   appearance and obvious strength.  Rarely were other plumbers assigned to the Cutting Truck as

9   this job was done by Laborers.  Because of unfair assignments such as this one, and the length of

10  time that King spent in more rigorous and physical activities, King was finally forced into

11  disability retirement on March 20, 2010.   King Decl., Par. 30

12      At paragraph 8 of Teahan's declaration, Teahan states, among other things,  that King

13  was assigned to the Main Gang in accordance with my wishes in late 2005 or early to mid 2006.

14  King Decl., Par. 31

15      King's assignment to the main gang in 2006 confirms that he spent his first ten (10) years

16  with the Water Department in the Service Department.  His assignment to the main gang was not

17  a logical progression from Utility Plumber as non Black Apprentice Plumbers were also routinely

18  assigned to the Main Gang.  Despite ten years with a clean service record, no unsatisfactory

19  evaluations, no disciplinary actions and no indication of inferior work, King spent ten (10) years

20  in the Service Department before being assigned to the Main Gang, not as a result of the

21  previously indicated criteria, but because he requested the transfer.   King Decl., Par. 32

22      At paragraph 9 of Teahan's declaration, Teahan states, among other things,  that during

23  the entire time that King was employed at the SFPUC, i.e., from 1996 until his February, 2010

24  leave of absence, King never reported to Teahan or to his knowledge, never reported to any

25  Foreman or other supervisor or employee that any City employee had ever discriminated against

26  him on account of his race, and/or treated him differently, because of his race, and/or made any

27

28

kind of racially-derogatory or insensitive remark about him in his presence.   King Decl., Par. 33

King sought and obtained counseling from Defendant's Employee Assistance Program between August 2, 2007 and December, 2011, during which time he complained of his anger and elevated stress level related to unfair managerial practices, racial discrimination, and ongoing harassment, including the continual exacerbation of residual daily stressors he had been experiencing due to remaining strong feelings and disappointments about unfair practices at his place of employment.   Kings complaints were made to Jean Crossman-Miranda in her capacity as Senior Employee Assistance Counselor.   As is common among disenfranchised groups, fear of reprisal tends to ensure silence.   King has spoken at length with African American co-workers, who rale against the practices of the Water Department, but would never consider making a formal complaint.   The discriminatory practices of the Water Department have been long standing and as King came to realize will not change without challenge.   This determination to bring the Water Department to task for discrimination and blatant racism has been encouraged by counseling and therapy.   King also complained to Kevin Berry, Manager, in 2009 and Bill Teahan on the last day of his employment in February, 2010.   King Decl., Par. 34

At paragraphs 10 and 11 of Teahan's declaration, Teahan states, among other things,  that King was off work on medical leave from the fall of 2007 through early February, 2009, that he was informed that King was not to perform digging with a shovel, or installing pipes, more than 5.4 hours per work day, which was seldom required of a Utility Plumber and was not to walk, bend, squat, keel or twist more than 4 hours per work day, which Teahan did not have a problem with.   After King was returned to work in February, 2009 with medical restrictions, he was assigned work  consistent with his restrictions.   King Decl., Par. 35

As a matter of fact, King was never accommodated according to the restrictions set forth by his physician.   King Decl., Par. 36

Because of the refusal to recognize work limitations set forth by King's physician,  Dr. Null, as King continued to work, he suffered injuries to his neck on July 7, 2009, to his wrist on

July 27, 2009 and a hip strain on January 12, 2010, after which he was placed on light duty. King filed Workers Compensation claims relating to each of said injuries, the first two of which are pending.   King Decl., Par. 37

In fact, in keeping with the practiced intimidation, King was told by a supervisor that the original restrictions were too extensive and that King should return to Dr. Null and ask for adjustments.  King did ask for adjustments.  Despite his misgivings, Dr. Null revised the restrictions which indicated that this was required to continue his employment.   King Decl., Par. 38

At paragraph 12 of Teahan's declaration, Teahan states, among other things,  that King never complained about any failure of the Water Department to comply with work restrictions ordered by his physician.   King Decl., Par. 39

As a matter of fact, the medically prescribed restrictions were a matter of company record.  When first introduced, King was told the work restrictions were too extensive.  With these restrictions in hand, King was assigned duties which conflicted with the restrictions. Additionally, he informed the PUC of his restrictions, as well.   King Decl., Par. 40

King has read the Declaration of Lori Regler, Manager of Employee Relations and EEO Programs for Defendant City and County of San Francisco, Public Utilities Commission, a part of the PUC's Human Resources Services Division.   King Decl., Par. 41

In paragraph 5 thereof, Regler acknowledges Defendant's receipt on August 15, 2008, work restrictions issued by King's physician.   King Decl., Par. 42

King's  response, notwithstanding those restrictions, were never honored or complied with by the Water Department.   King Decl., Par. 43

At paragraph 6 of her Declaration, Regler reports that Lorceli Braganza, EEO Programs Personnel Analyst on August 22, 2008 directed a letter to King requesting a copy of his resume to determine if King qualified for any position other than his Utility Plumber position, and that subsequently, after failing to hear from King, the PUC sent him a subsequent letter on September

23, 2008, again requesting his resume.   King Decl., Par. 44

King   forwarded a copy of his resume as requested.   King Decl., Par. 45

At paragraph 7 thereof , although Regler states that in January, 2009, King's doctor, Dr Null or King, reported to the SFPUC that my condition had improved to the point that King should be able to return to work as a Utility Plumber with some restrictions.   King Decl., Par. 46

Those restrictions were never honored.   King Decl., Par. 47

Although in Paragraph 9 thereof, Regler states that SFPUC allowed Kin to return to work with the restrictions ordered by his physician as a reasonable disability accommodation.   The PUC refused to honor or comply with said restrictions.  King reported and complained of such to his counselor in the Employee Assistance Program.   King Decl., Par. 48

Although in paragraph 10 Regler states that on April 10, 2009, King attended a meeting with Lorceli Braganza, Mike DeBellis, and her concerning King's inability to continue his assignments without feeling pain, in which they informed him that he could request an additional reasonable accommodation with their assistance, the SFPUC continued to disregard work restrictions prescribed by King's doctor and he continued to suffer pain in performing his duties. King Decl., Par. 49

Although in paragraph 13, Regler states that King did not contact the EEO Unit again to follow up on a new or revised reasonable accommodation until February, 2010, as a matter of fact, the PUC was continuing to refuse to comply with outstanding work restrictions issued by his doctor.   King Decl., Par. 50

In paragraph 17 thereof, Regler states that King applied for a leave of absence pending his request for reasonable accommodation by placement in the position of Water Service Inspector. King has no recollection of such.   King Decl., Par. 51.

In Paragraph 18, Regler states that on or about March 8, 2010, the SFPUC's EEO Unit was notified that the Water Service Inspector position had been cut due to budget reasons. On that date, King was referred to the City's Department of Human Resources Reasonable

Accommodation Office to begin a 60 day Citywide job search for vacant positions to which King could be placed as a reasonable accommodation, and that on March 9, 2010, Ms. Taylor wrote King a letter notifying him of such.  King was not told  that the Water Service Inspector position had been cut due to budget reasons.   King Decl., Par. 52.

In Paragraph 21, Regler states that other than granting King leave as an interim accommodation, the City never had an opportunity to respond to King's February 10, 2010 accommodation request before he decided to retire and not pursue his accommodation request. The fact is that the City had plenty of time to respond to King's request for reasonable accommodation prior to King's  application for disability retirement prior to March 20, 2010. King Decl., Par. 53

In Paragraph 22, Regler incorrectly states that King never requested either verbally or in writing, that he be assigned to the leak location truck or the pipe location truck as a reasonable accommodation disability request.   King Decl., Par. 54

As a matter of fact, King did request to work on the pipe location truck.   King Decl., Par. 55

In Paragraph 23, Regler states that at no time prior to King's November 17 or 18 Charge of Discrimination did he ever report to the SFPUC's EEO Unit that any City employee ever discriminated against King on account of his race, and/or treated him differently because of his race, and/or made any kind of racially derogatory or insensitive remark about him or in his presence.   King Decl., Par. 56

King sought and obtained counseling from Defendant's Employee Assistance Program between August 2, 2007 and December, 2011, during which time he complained of his anger and elevated stress level related to unfair managerial practices, racial discrimination, and ongoing harassment, including the continual exacerbation of residual daily stressors he had been experiencing due to remaining strong feelings and disappointments about unfair practices at his place of employment.  My complaints were made to Jean Crossman-Miranda in her capacity as

Senior Employee Assistance Counselor.   As is common among disenfranchised groups, fear of reprisal tends to ensure silence.  King has spoken at length with African American co-workers, who rale against the practices of the Water Department, but would never consider making a formal complaint.   The discriminatory practices of the Water Department have been long standing and as King came to realize will not change without challenge.   This determination to bring the Water Department to task for discrimination and blatant racism has been encouraged by counseling and therapy.  King also complained to Kevin Berry, Manager, in 2009 and Bill Teahan on the last day of King's employment in February, 2010.   King Decl., Par. 57

IV.  ISSUES PRESENTED

The primary issues appear to be:

1.  Whether Plaintiff has presented viable evidence of race discrimination and harassment.

2.  Whether Plaintiff has presented evidence supporting his disability discrimination claims?

3.  Whether Plaintiff has presented viable evidence supporting his claim pursuant to California Government Code Section 12940k.

4.  Whether Plaintiff has presented credible evidence to support his claims for retaliation?

V.  ARGUMENT

**Summary Judgment Standards**

The provisions of Fed.R.Civ.P. Rule 56 clearly establish that the moving party carries the burden of showing that no material issues of facts in the case remain genuinely in issue and that it is entitled to judgment as a matter of law.

The moving party is held to a stringent standard.  It is well settled that the moving party in a Rule 56 motion has the burden of demonstrating that no material fact in the case remains genuinely in issue and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, (1970) 90 S.Ct. 1598, 398 U.S. 148, 26 L.Ed.2d 1429, *California Pacific Bank v. Small*

1   *Business Administration*, 557 F.2d 218 (9th Cir. 1977).

2         Finally, it has long since been established in *Pollar v. Columbia Broadcasting Sys., Inc.*,

3   (1962) 82 S.Ct. 486, 368 U.S. 464, 7 L.Ed. 2d 967, that before summary judgment will be

4   granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of

5   fact will be resolved against the movant.  *Pepper & Tanner, Inc., v. Shamrock Broadcasting,*

6   *Inc.,* 563 F.2d 391 (9th Cir. 1977); *U.S. Jaycees v. San Francisco Junior Chamber of Commerce*,

7   (D.C. Cal. 1972), 354 F. Supp. 61 aff'd per curium, 513 F.2d 1226 (9th Cir. 1975).

8         Defendant has attempted to try this case by declarations and arguments, being clearly

9   unable to carry its burden of showing that no material fact in this case remains genuinely in issue

10  and that it is entitled to judgment as a matter of law.  In examining the supporting and opposing

11  papers, the moving party's affidavits or declarations are strictly construed and those of the

12  opposing party are liberally construed, accepted as true, and doubts as to the propriety of granting

13  the motion should be resolved in favor of the party opposing the motion.  Summary Judgment is

14  a drastic procedure and should be used with caution so that it does not become a substitute for the

15  open trial method of determining facts.

16        In this matter, Plaintiff Andrew King (hereinafter referred to as "King") has demonstrated

17  and the record is replete with evidence that every material factual element of every issue in this

18  case remains genuinely in dispute.

19        **Summary of Argument**

20        In this action, King has shown a pattern of unlawful discriminatory employment practices

21  against him, including but not limited to the continued refusal to reasonably accommodate his

22  physical disabilities which aggravated said physical disabilities and ultimately forced him to seek

23  disability retirement effective March 20, 2010.

24        1.    **King Has Presented Substantial Credible Evidence Supporting His Claims of Race Discrimination and Harassment Pursuant 42 U.S.C. Section 1981 and California Government Code Section 12940a and j.**

25

26  King has presented substantial credible evidence supporting his claims of race

27

28  MPA ISO Opp MSJ          15

discrimination and harassment (First, Third and Fourth Causes of Action) pursuant 42 U.S.C. Section 1981 and California Government Code Section 12940a and j.

Defendant erroneously argues that there is no evidence supporting King's claims of race discrimination or harassment contending that a) that King's race discrimination and harassment claims are time barred and b) that there is no evidence supporting King's race discrimination or harassment claims.

A.  Plaintiff's Racial Discrimination and Harassment Claims Pursuant to 42 U.S.C. Section 1981 and Fair Employment and Housing Act, California Government Code Section 12940a and j are not time barred.

In its contention that King's racial discrimination and harassment claims pursuant to 42 U.S.C. Section 1981 and the Fair Employment and Housing Act are time barred, Defendant mistakenly relies upon incidents which are not the subject of said causes of action but simply provide an evidentiary history of discriminatory animus.

However, Defendant correctly notes the four year statute of limitations for actions pursuant to 42 U.S.C. Section 1981 and the one year statute of limitations governing actions brought pursuant to FEHA (the administrative charge must be fled within one year following the conduct and a civil action brought therein must be filed within one year after the issuance of a notice of right to sue by the California Department of Fair Employment and Housing.

King's within first, third and fourth causes of action for racial discrimination and harassment pursuant to 42 U.S.C. Section 1981 and Fair Employment and Housing Act, California Government Code Section 12940a and j (based upon an administrative charge filed with DFEH on November 4, 2010, and a notice of right to sue thereon issued by DFEH on November 18, 2010).

Said actions were filed in this Court on March 30, 2011, clearly within the applicable four year and one year statutes of limitation and based upon Defendant's continuing harassment and refusal to reasonably accommodate King's qualified disability in February, 2010, on account of

his race and color, which aggravated said disability ultimately compelling King to apply for and receive disability retirement effective March 20, 2010.

B.  The record herein reflects an employment - long history of discriminatory and harassing conduct against King culminating in the refusal to reasonably accommodate his qualified disability, aggravating his condition, forcing him to undergo psychotherapy, and finally compelling him to seek and obtain a disability retirement from his said employment.

The record herein reflects an employment - long history of discriminatory and harassing conduct against King culminating in the refusal to reasonably accommodate his qualified disability, aggravating his condition, forcing him to undergo psychotherapy, and finally compelling him to seek and obtain a disability retirement from his said employment.  See paragraphs 1 through 21 of Plaintiff's Declaration.

King has further described in full detail the ongoing pattern and practice of discrimination and harassment against him in his response to the declarations of Bill Teahan, Superintendent of the San Francisco Public Utilities Commission, Water Department and Lori Regler, as Manager of Employee and Human Relations and EEO Programs for the San Francisco Public Utilities Commission, a part of the SFPUC's Human Resources Services.  King Decl., Pars. 23 - 57.

Thusly, King has clearly established a prima facie case for discrimination and harassment, by showing that he was a member of a protected class, he was qualified and performing competently in his position, that he was subjected to adverse employment actions, and that similarly situated individuals outside of his class were treated more favorably as required in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Nor can Defendant provide a legitimate non discriminatory business reason for its adverse employment actions and conduct against King since reasons given by it are untrustworthy, unworthy of belief, contrary to the substantial credible evidence in the record, and must be rejected out of hand.  Under these circumstances, reasons given by Defendant for said actions can

only be reasonably be considered as a pretext for discrimination and harassment on account of race and color.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Guz v. Bechtel National, Inc.*, (2000) 24 Cal.4th 317, 335.

**2.    King Has Presented Substantial Credible Evidence Supporting His Claims of Disability Discrimination.**

King has presented substantial credible evidence supporting his claims of disability discrimination (Second Cause of Action) pursuant to California Government Code Section 12940a, m and n.

Defendant argues that there is no evidence supporting King's disability discrimination claims contending that a) there is no evidence the City violated Cal. Govt. Code Section 12940(a) and b) that there is no evidence the City violated Cal. Govt. Code Section 12940 (m) or (n).

Defendant's argument and contentions are without merit and contradict the substantial credible evidence in the record.

A. The evidence shows clearly that Defendant violated  Cal. Govt. Code Section 12940(a), by discriminating against King on the basis of disability.

The evidence shows clearly that Defendant violated  Cal. Govt. Code Section 12940(a), by discriminating against King on the basis of disability.  Cal. Govt. Code Section 12940a makes it an unlawful employment practice to discharge a person from employment or discriminate against the person in the terms, conditions, or privileges of employment, because of physical or mental disability or medical condition.

Defendant denies that it took any adverse employment action against King based on disability or otherwise.   It further contends that it provided King with a disability reasonable accommodation in early 2009 and an interim accommodation in 2010 pending the results of a 60 day Citywide job search.

Said denial and contention are contrary to the substantial credible evidence in the record demonstrating that Defendant continued to refuse to comply with work restrictions and limitations ordered by King's doctor and in fact, never provided reasonable accommodation for

1  and because of his qualified disability, thereby discriminating against him in the terms and

2  conditions of his employment on account of said disability in violation of Cal. Govt. Code

3  Section 12940a.  King Decl., pars. 13, 14, and 15.  See also Pars. 22 - 57 of King Decl.

4  B.   The evidence shows clearly that Defendant violated  Cal. Govt. Code Sections 12940(m) and

5  (n) by failing to provide him with a reasonable accommodation and failing to engage in the

6  interactive process in good faith.

7       The evidence shows clearly that Defendant violated Cal. Govt. Code Sections 12940(m)

8  and (n) by failing to provide him with a reasonable accommodation and failing to engage in the

9  interactive process in good faith.

10      Defendant simply and erroneously argues that there is no evidence the City violated Cal.

11  Govt. Code Section 12940(m) and (n) contending that 1) the City did not discriminate by not

12  placing King on the Leak Location of [sic] Pipe Location Trucks and 2) the City did not

13  discriminate simply because it had not fully responded to King's second request within one

14  month.

15      As a matter of fact, at no time after King returned to work in February, 2009, did

16  Defendant honor or comply with work restrictions and limitations ordered by King's doctors.

17  Nor did Defendant at any time after King's return to work in February, 2009, until his forced

18  disability retirement on March 20, 2010 did Defendant engage in any meaningful interactive

19  process in good faith.  King Decl., Pars. 13, 14 and 15.

20              3.    **King Has Presented Substantial Credible Evidence Supporting**
21                    **His Claims of Harassment pursuant to Cal. Govt. Code Section**
                      **12940k.**

22      King has presented substantial credible evidence supporting his claims (Fourth Cause of

23  Action) for harassment pursuant to Cal. Govt. Code Section 12940k.

24      Cal. Govt. Code Section 12940k requires an employer to prevent harassment of an

25  employee, because of his race, color or disability.

26      King has established, as already discussed above, that he was subjected to harassment on

27

28  MPA ISO Opp MSJ                                19

account of his race and color, and physical disability (which also aggravated his physical disability and mental condition).

The substantial credible evidence, as already presented herein, demonstrates that not only did Defendant fail and refuse to prevent said harassment, it approved and ratified same.

### 4. **King Has Presented Substantial Credible Evidence to Support His Claims of Retaliation**.

King Has Presented Substantial Credible Evidence Supporting His Claims (First and Fifth Causes of Action) of Retaliation pursuant to 42 U.S.C. Section 1981 and California Government Code Section 12940h.

King sought and obtained counseling from Defendant's Employee Assistance Program between August 2, 2007 and December, 2011, during which time he complained of his anger and elevated stress level related to unfair managerial practices, racial discrimination, and ongoing harassment, including the continual exacerbation of residual daily stressors he had been experiencing due to remaining strong feelings and disappointments about unfair practices at his place of employment.  King's complaints were made to Jean Crossman-Miranda in her capacity as Senior Employee Assistance Counselor.  King Decl., Par. 18, 34, 57.  In addition, King complained to Kevin Berry, Manager of the SFPUC in 2009, of unfair treatment to which he was being subjected.  King also complained to Teahan, Superintendent on his last day of work in February, 2010, of said unfair treatment.

King has shown that subsequent to his said complaints, and with temporal proximity, that he has been denied reasonable accommodation for his qualified disability, and forced into disability retirement as a direct result of said complaints.

Accordingly, King has easily established a *prima facie* case of retaliation meeting the requirements of *Pardi v. Kaiser Found. Hosps*, 389 F.3d 840, 850 & n.5 (9th Cir. 2004) and *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028 (2005) and related cases cited by Defendant.

Inasmuch as Defendant can provide no legitimate non discriminatory reason for refusing to reasonably accommodate King's qualified physical disability, reasons proffered by it must be

1  rejected and considered a pretext for retaliation.

2  VI.  CONCLUSION

3         The foregoing demonstrates that Defendant has failed to carry its burden to show that no

4  triable issue remains and that it is entitled to judgment as a matter of law relating to King's First

5  Cause of Action for discrimination on account of his race and color in violation of 42 U.S.C.

6  Section 1981,  his Second Cause of Action for Discrimination on Account of Physical Disability

7  And Refusal to Reasonably Accommodate Physical Disability in violation of California

8  Government Code Section 12940a, m and n, his Third Cause of Action for Race and Color

9  Discrimination, in violation of California Government Code Section 12940a, his Fourth Cause of

10 Action for harassment, in violation of California Government Code Section 12940j and k, and his

11 Fifth Cause of Action for retaliation, in violation of California Government Code Section 12940h.

12        Accordingly, it is respectfully requested that Defendant's Motion for Summary Judgment

13 be denied in its entirety.

14 Dated: August 15, 2012                              Respectfully submitted,

15

16                                                      /s/ Curtis G. Oler
                                                       _____
17                                                     CURTIS G. OLER
                                                       Attorney for Plaintiff

18

19

20

21

22

23

24

25

26

27

28  MPA ISO Opp MSJ                          21